UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| LINDA L. ADAMS, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5: 13-313-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| CAROLYN W. COLVIN, | ) | **MEMORANDUM OPINION** |
| Acting Commissioner of Social Security, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*  \*\*\*  \*\*\*  \*\*\*

This matter is pending for consideration of cross-motions for summary judgment filed by Plaintiff Linda L. Adams and Defendant Carolyn W. Colvin, Acting Commissioner of Social Security. [Record Nos. 11, 13] Adams contends that the administrative law judge ("ALJ") erred in finding that she is not entitled to a period of disability, Supplemental Security Income, and Disability Insurance Benefits ("DIB") under the Social Security Act ("Act"). She seeks reversal of the ALJ's decision and an award of benefits. The Commissioner asserts that the ALJ's decision was proper and should be affirmed. For the reasons discussed below, the Court will grant the Commissioner's motion for summary judgment. Adams' motion will be denied.

**I.**

On March 14, 2011, Adams applied for child's Supplemental Security Income, DIB, and Supplemental Security Income under Title XVI of the Act. [*See* Administrative Transcript, pp. 76, 235-45; hereafter, "Tr."] However, her claim for DIB was denied on March 26, 2011,

because she had not earned a sufficient amount of work credits to qualify for the benefits. [Tr., pp. 76, 246-48] She alleges a disability beginning on November 1, 2010. [Tr., pp. 76, 235] Her applications were denied initially and upon reconsideration. [Tr., pp. 162-75]

Adams, along with her attorney Rodney Davis and impartial vocational expert ("VE") Linda Taber, appeared before ALJ Ronald M. Kayser, on August 30, 2012, for an administrative hearing. [Tr., p. 90] Adams was twenty-one years old at the time of the ALJ's decision. She has an associate's degree and, at the time of the ALJ's decision, was enrolled in a full-time college program obtaining a bachelor's degree. [Tr., pp. 94-95] She has previously worked part-time as a secretary clerk, receptionist, and waitress. [Tr., pp. 95-98, 281]

Adams claims to be disabled due to post-traumatic stress disorder ("PTSD"), anxiety, depression, insomnia, panic attacks, borderline personality disorder, and somatoform disorder. [Tr., pp. 299, 328] After reviewing the record and testimony presented during the administrative hearing, ALJ Kayser concluded that Adams suffered from the severe impairments of affective mood disorder and anxiety disorder. [Tr., p. 78] Notwithstanding these impairments, the ALJ determined that Adams maintained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, subject to the following limitations:

> [Adams] has moderate limitations on her ability to (a) maintain attention and concentration for extended period; (b) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerance; (c) complete a normal workday and workweek without interruption from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; (d) interact appropriately with the general public; (e) respond appropriately to changes in the work setting; (f) travel in unfamiliar places or use public transportation; and (g) set realistic goals or make plans independently of others.

[Tr., p. 81]

ALJ Kayser determined that Adams had no past relevant work. [Tr., p. 83] And based on the VE's testimony, and after considering Adams' age, education, work experience, and RFC, the ALJ found that Adams could perform other jobs that exist in significant numbers in the national economy, such as an industrial cleaner, housekeeper, and laundry worker. [Tr., p. 84] As a result of these findings, the ALJ concluded that Adams was not disabled under the Act.

## II.

Under the Act, a "disability" is defined as "the inability to engage in 'substantial gainful activity' because of a medically determinable physical or mental impairment of at least one year's expected duration." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007). A claimant's Social Security disability determination is made by an ALJ in accordance with "a five-step 'sequential evaluation process.'" *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) (en banc) (quoting 20 C.F.R. § 404.1520(a)(4)). If the claimant satisfies the first four steps of the process, the burden shifts to the Commissioner with respect to the fifth step. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

First, the claimant must demonstrate that she is not engaged in substantial gainful employment at the time of the disability application 20 C.F.R. §§ 404.1520(b), 416.920(b). Second, the claimant must show that she suffers from a severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(c), 416.920(c). Third, if the claimant is not engaged in substantial gainful employment and has a severe impairment which is expected to last for at least twelve months and which meets or equals a listed impairment, she will be considered disabled

without regard to age, education, and work experience. 20 C.F.R. §§ 404.1520(d), 416.920(d). Fourth, if the Commissioner cannot make a determination of disability based on medical evaluations and current work activity and the claimant has a severe impairment, the Commissioner will then review the claimant's RFC and relevant past work to determine whether she can perform his past work. If she can, she is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f).

Under the fifth step of the analysis, if the claimant's impairment prevents her from doing past work, the Commissioner will consider her RFC, age, education, and past work experience to determine whether she can perform other work. If she cannot perform other work, the Commissioner will find the claimant disabled. 20 C.F.R. § 404.1520(g), 416.920(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 784 (6th Cir. 2009) (quoting *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999)).

Judicial review of the denial of a claim for Social Security benefits is limited to determining whether the ALJ's findings are supported by substantial evidence and whether the correct legal standards were applied. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). The substantial-evidence standard presupposes that there is a zone of choice within which decision makers can go either way, without interference from the court. *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). Substantial evidence is such relevant

evidence as a reasonable mind might accept as sufficient to support the conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

If supported by substantial evidence, the Commissioner's decision must be affirmed even if the Court would decide the case differently and even if the claimant's position is also supported by substantial evidence. *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007); *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007); *Longworth v. Comm'r of Soc. Sec. Admin.*, 402 F.3d 591, 595 (6th Cir. 2005); *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993). Therefore, the Commissioner's findings are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g).

## III.

### A. Severe Impairments

In her motion for summary judgment, Adams claims that the ALJ failed to classify her PTSD, depression, and borderline personality disorder as severe impairments. [Record No. 11, p. 6] Adams relies on her diagnosis as evidence that the ALJ should have classified her PTSD, depression and borderline personality disorder as severe impairments. [Record No. 11, pp. 6-7] However, the mere diagnosis of an impairment says nothing of its severity or the limitations it may cause. *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988). Regardless, the ALJ proceeded past step two of the sequential evaluation process and analyzed both Adams' severe and nonsevere impairments.

The Sixth Circuit has held that "the severity determination is 'a *de minimis* hurdle in the disability determination process.'" *Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008)

(quoting *Higgs*, 880 F.2d at 862). "[A]n impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education and experience." *Higgs*, 880 F.2d at 862. The test is used to "screen out totally groundless claims." *Farris v. Sec'y of Health and Human Servs.*, 773 F.2d 85, 89 (6th Cir. 1985).

At step two, the ALJ determined that Plaintiff had two severe impairments, affective mood disorder and anxiety disorder. [Tr., p. 78] Adams fails to recognize that once step two is "cleared" by finding that some severe impairment exists, the ALJ must then consider a plaintiff's "severe and nonsevere impairments in the remaining steps of the sequential analysis." *Anthony*, 266 Fed. App'x at 457. "The fact that some of [a plaintiff's] impairments were not deemed to be severe at step two is therefore legally irrelevant." *Id.* Consequently, any alleged omission of Adams' PTSD, depression, and borderline personality disorder from the list of severe impairments does not necessarily undermine the ALJ's decision. *See Anthony*, 266 Fed. App'x at 457; *Talos v. Comm'r of Soc. Sec.*, No. 11-13207, 2012 WL 1392156, at *8 (E.D. Mich. Mar.26, 2012); *Maziarz v. Sec. of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir.1987).

In the present case, the ALJ properly considered Adams' PTSD, depression, and borderline personality disorder in the remaining steps of the sequential analysis. Specifically, the ALJ discussed Adams' depression as diagnosed by the Eastern Kentucky University Counseling Center. [Tr., p. 82] However, while Adams was reluctant to participate in group therapy or take medications, the ALJ found that she admitted to improvement when compliant with treatment. [*Id.*] Additionally, her Global Assessment of Functioning ("GAF") score of fifty-five, at the lowest, only evidenced moderate symptoms. [*Id.*] Likewise, the ALJ considered

that Adams' mental impairments could reasonably be expected to cause only certain mental symptoms and found that Adams' statements concerning the intensity, persistence, and limiting effects of those symptoms were not fully credible. As discussed more fully below, the ALJ also determined Jennifer Wilke-Deaton's, M.A., findings concerning Adams' PTSD and borderline personality disorder where unsupported by the evidence of record. In summary, the ALJ adequately considered all of Adams' severe and nonsevere impairments.

## B. Weight of Medical Opinions

Adams also claims that the ALJ erred by failing to adequately evaluate the opinion evidence. [Record No. 11, pp. 9-13] Specifically, she argues that the ALJ improperly rejected the opinion of Wilke-Deaton who examined Adams at the behest of the Department of Vocational Rehabilitation.

An examining physician's opinion is not entitled to any special deference or consideration. 20 C.F.R. §§ 404.1527(c); 416.927(c). The weight given to a medical opinion depends on a variety of other factors, including whether a source actually treated a claimant, the supportability of the source's opinion, the consistency of the opinion when compared with the record as a whole, and other factors. *Id*. The ALJ must always give "good reasons" for accepting or rejecting a medical opinion. 20 C.F.R. §§ 404.1527(c)(2); 416.927(c)(2); SSR 96-2p, 1996 WL 374188 (Even if a treating source's medical opinion is well-supported, controlling weight may not be given to the opinion unless it also is "not inconsistent" with the other substantial evidence in the case record). An "ALJ 'is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and

documentation." *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 509 (6th Cir. 2006) (per curiam) (quoting *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001)); *see also White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 286 (6th Cir. 2009) ("Conclusory statements from physicians are properly discounted by ALJs."). Moreover, the regulations provide that a physician's statement regarding whether a claimant is "disabled" or "unable to work" does not mean that the claimant is disabled. 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1).

Adams was referred to Wilke-Deaton in September 2011 for testing to assist in school support and finding employment, [Tr., pp. 528-35] Wilke-Deaton found that Adams was anxious, had restricted affect and restless body motions. However, she also noted that Adams was cooperative, overly polite, and motivated in all the tasks she attempted as part of the evaluation. [Tr., pp. 528-29] Wilke-Deaton gave Adams an IQ on which she scored an 82, suggesting intellectual functioning in the low average range. [Tr., pp. 531-32] She then diagnosed Adams with PTSD, major depressive disorder, anorexia nervosa (binging type), mathematics disorder, and borderline personality disorder. [Tr., p. 534] Wilke-Deaton also found that Adams has significant difficulty with withdrawal, concentrating, following through with tasks, and assigned her a GAF of 35. [Tr., pp. 533-34]

Wilke-Deaton also completed a medical source statement in November 2011, assessing Adams' ability to do work-related activities. [Tr., pp. 485-87] She found that Adams had slight restrictions in her ability to understand, remember, and carry out short, simple instructions and marked restrictions in her ability to understand, remember, carry out detailed instructions, make judgments on simple work related decisions, interact appropriately with the public, supervisors,

and coworkers, and respond appropriately to work pressures and changes in work setting. [Tr., pp. 486-87] Wilke-Deaton also determined that Adams was not capable of managing benefits for her self interest. [Tr., p. 487]

Contrary to Adams' argument, the ALJ properly afforded Wilke-Deaton's opinion "little weight" and provided good reasons for reaching this conclusion. [Tr., pp. 82-83] The ALJ noted that Wilke-Deaton's opinions "grossly depart[ed] from the claimant's treatment records and her current lifestyle." [Tr., p. 83] The Court agrees that Wilke-Deaton's opinions are not supported by the evidence of record and the ALJ's decision to afford her opinions little weight was supported by substantial evidence.

Wilke-Deaton found that Adams marked limitations in her mental ability to function. However, Adams has obtained an associate's degree and was pursuing a bachelor's degree at the time of the administrative hearing. [Tr., p. 83] This certainly undermines the diagnosis of marked limitations or major impairments of mental functioning made by Wilke-Deaton. This educational background also belies Wilke-Deaton's findings concerning Adams' IQ score which suggested intellectual functioning in a low average range.

Adams' treatment records also support the ALJ's decision to give Wilke-Deaton's opinion little weight. For example, the ALJ found that while Wilke-Deaton made a diagnosis of borderline personality disorder, none of Adams' treatment records made a similar finding. [Tr., p. 82] Additionally, Wilke-Deaton provided a GAF score of 35 suggesting some impairments in reality testing or communication or major impairment in several areas, such as work, school, family relations, judgment, thinking, or mood. [Tr., p. 534] However, the ALJ

noted that the record demonstrates Adams' GAF scores have consistently been found to show no more than moderate symptoms, with a score of 55 being the lowest. [Tr., pp. 462, 501-02, 504, 513, 519, 521, 534] In fact, at the highest, her GAF was scored at 70. [Tr., p. 502] These contradictions bolster the ALJ's contention that Wilke-Deaton's opinion was not supported by the record.

Additionally, the ALJ determined that Wilke-Deaton's findings concerning a constant tremor, periods of disassociation, and a history self-mutilation or suicidal gestures were contradicted by the record. [Tr., p. 83] Specifically, the ALJ mentioned that none of Adams' records from either Bluegrass Comprehensive Care or the Eastern Kentucky Counseling Center make any mention of those issues. Adams claims this conclusion was in error because her last incident of self-mutilation was in 2010, before her treatment at Bluegrass Comprehensive Care and the Eastern Kentucky Counseling Center. [Record No. 11, p. 10] She claims that there was no mention of these prior self-mutilation incidents because she did not make these allegations since 2010, predating treatment at those facilities. [*Id.*] However, the ALJ noted that there was no other mention of a *history* of self-mutilation. Regardless, even in the ALJ was mistaken on that single issue, the record is still devoid of any mention of a constant tremor or periods of disassociation, further undermining the weight Wilke-Deaton's opinion.

The ALJ assigned the opinion of State agency psychologist Dan Vandivier, Ph.D., "greater weight," his opinion further undermines Wilke-Deaton's opinion. [Tr., p. 83] It is proper to consider the opinions of state agency medical consultants. *See* 20 C.F.R. §§ 404.1527(e); 416.927(e). And because state agency consultants are considered experts in the

Social Security disability programs, their opinions may be entitled to great weight if they are supported by the evidence of the record. *See* 20 C.F.R. §§ 404.1527(e)(2); 416.927(e)(2); SSR 96-6p, 1996 WL 374180 (July 2, 1996); *see also Hibbard v. Astrue*, 537 F. Supp. 2d 867 (E.D. Ky. 2008).

Dr. Vandivier found that Adams has mild restrictions in the activities of daily living and moderate difficulties in maintaining social function, concentration, persistence, and pace. [Tr., 145, 155-56] He also determined that Adams has moderate limitations on her: (i) ability to maintain attention an concentration for extended periods; (ii) perform activities within a schedule; (iii) maintain regular attendance and be punctual; (iv) complete a normal workday and workweek without interruption from psychologically based symptoms and to perform at a consistent pace; (v) interact appropriately with the general public; (v) respond appropriately to changes in work setting; (vii) travel in unfamiliar places or use public transportation; and (viii) set realistic goals or make plans independently of others. [Tr., pp. 146-47]

ALJ Kayser correctly found that this opinion was consistent with the evidence of record. Therefore, it was entitled to the "greater weight" it was assigned. *See* 20 C.F.R. §§ 404.1527(e)(2); 416.927(e)(2). Dr. Vandivier's assessment of Adams is consistent with the RFC determination and the ALJ's findings. Further, it is counter to the findings of Wilke-Deaton. Thus, Dr. Vanivier's opinion serves as substantial evidence on which the ALJ based his determination and demonstrates that the ALJ's decision to afford Wilke-Deaton's opinion was not in error.

In short, the ALJ properly assigned minimal weight to Wilke-Deaton's opinion. Wilke-Deaton's assessment was not supported by and was inconsistent with the medical evidence in the record. As outlined above, the ALJ provided good reasons for discounting the opinion of Wilke-Deaton and the ALJ's determination is supported by substantial evidence. *See Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 877 (6th Cir. 2007) (the ALJ's decision not to give treating source's opinions controlling weight because the opinions were "inconsistent with the overall evidence of record" was "a factual determination within [the ALJ's] discretion").

Adams also makes a cursory argument that the ALJ disregarded the opinions of Bluegrass Comprehensive Care and the Eastern Kentucky Counseling Center. [Record No. 11, p. 11] However, Adams makes no citation to the record or any further extrapolation of the issue.

Where a claimant has failed to specifically identify alleged error, the Sixth Circuit has:

> decline[d] to formulate arguments on [the claimant's] behalf, or to undertake an open-ended review of the entirety of the administrative record to determine (i) whether it might contain evidence that arguably is inconsistent with the Commissioner's decision, and (ii) if so, whether the Commissioner sufficiently accounted for this evidence. Rather, we limit our consideration to the particular points that [the Claimant] appears to raise in [his] brief on appeal.

*Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 491 (6th Cir. 2006); *see also McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.") (citation and quotation marks omitted).

Even though Adams does not present a sufficient objection, the records from Bluegrass Comprehensive Care and the Eastern Kentucky Counseling Center that are a part of the

administrative record do not render the ALJ's conclusions erroneous. Rather, these records contain no opinions from a treating source. Additionally, although Adams claims the ALJ disregarded the diagnoses from Bluegrass Comprehensive Care and the Eastern Kentucky Counseling Center, that was found to not be in error. The mere fact that a diagnosis was made does not say anything concerning the severity of the condition and the ALJ discussed all of Adams' nonsevere conditions later in his opinion. *Higgs*, 880 F.2d at 863. Regardless, the ALJ did discuss the evaluations performed at Bluegrass Comprehensive Care and the Eastern Kentucky Counseling Center. [Tr., pp. 82] Without more, this objection fails and does not show that the ALJ made an error entitling Adams to the relief sought.

**IV.**

Adams has not established that she is disabled as defined by the relevant provisions of the Social Security Act. After reviewing the record, the Court does not find any of Adams' arguments persuasive. The ALJ did not err in evaluating the evidence and his decision is supported by substantial evidence. Accordingly, it is hereby

**ORDERED** as follows:

1. Plaintiff Linda L. Adams' motion for summary judgment [Record No. 11] is **DENIED**.

2. Defendant Carolyn W. Colvin's motion for summary judgment [Record No. 13] is **GRANTED**.

3. The administrative decision of Administrative Law Judge Ronald M. Kayser will be **AFFIRMED** by separate Judgment entered this date.

This 25th day of August, 2014.



Signed By:
*Danny C. Reeves* DCR
United States District Judge